# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TOTALENERGIES E&P USA, INC., | ) | CASE NO. 5:21-cv-01676 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CTF LTD. et al., | ) | |
| | ) | |
| Defendants. | ) | |

Currently pending before the Court in the above-captioned case is Defendants CTF LTD., Ronald E. Carlton, Judy L. Carlton, Richard A. Carlton, Catherine A. Carlton, Bruce D. Carlton, Catherine B. Carlton and Lawrence J. Fechko's (collectively, "Defendants") Motion to Dismiss (ECF No. 9), Plaintiff TotalEnergies E&P USA, Inc.'s ("Plaintiff" or "TotalEnergies") Memorandum in Opposition (ECF No. 13), Defendants' Reply Brief (ECF No. 16) and Plaintiff's Surreply (ECF No. 18).  For the following reasons, Defendants' Motion is GRANTED.

## I. BACKGROUND

### A. Facts

Total Energies is a company engaged in the exploration and development of oil and gas and is incorporated in the State of Delaware with its principal place of business in Houston, Texas. (ECF No. 1, Compl. at PageID #3 ¶ 5).  Defendants are lessors under nine respective oil and gas leases (the "Leases") at issue in this matter and are Ohio Citizens.  (ECF No. 1, Compl. PageID #3 ¶¶ 6-10).  The Leases were originally entered into between Defendants as lessors and Oklahoma-based Chesapeake Exploration, LLC as lessee in 2011.  (ECF No. 1, Compl. at PageID #8 ¶ 23; ECF No. 9, Def.'s Mot. To Dismiss at PageID #2).  Chesapeake Operating, LLC along with Chesapeake Exploration, LLC (collectively "Chesapeake") operated the wells under the

1

leases.  (Id.).

On December 30, 2011, TotalEnergies acquired a minority approximate twenty five percent (25%) interest in Chesapeake's working interest in approximately 70,000 Ohio oil and gas leases, making TotalEnergies a minority working interest owner in the Leases.  (ECF No. 1, Compl. at PageID #5 ¶¶ 14-15).  Chesapeake continued to operate the wells under the Leases after this agreement. (Id.).  The Leases contain identical royalty provisions that requires Chesapeake to pay Defendants "twenty percent (20%)…of the gross proceeds…of the total gross production attributable to the applicable well."  (ECF No. 11-3, Pl.s' Ex. A at PageID #27).

On January 1, 2018, Chesapeake assigned all of its interest to Texas-based Encino Energy ("Encino").  Id.  Thereafter, Encino took over operatorship of the wells under the Leases.  (ECF No. 1, Compl. at PageID #5 ¶ 16).  Although Encino acquired all of Chesapeake's interests, TotalEnergies alleges that it continued to operate as a separate working interest owner in the Leases without direct privity of contract with Encino.  (Id.)

However, Encino's affiliate EAP Ohio and TotalEnergies entered into both a Services Agreement and Joint Operating Agreement.  Under the Joint Operating Agreement, Plaintiff is required to pay royalties on its 25% interest in the Leases as well as indemnify, defend, and hold other parties to the Joint Operating Agreement, including EAP Ohio, free from any liability therefor.  (ECF No. 14-2, Pl.'s Ex. A.2 at PageID #563).  Under the Services Agreement between EAP Ohio and TotalEnergies, TotalEnergies pays royalties under the Leases by and through Encino.  (ECF No. 1, Compl. at PageID #1 ¶ 29).  EAP Ohio, as Service Provider, pays royalties to Defendants based on information provided by TotalEnergies as Service Recipient.  (ECF No. 14-2, Pl.'s Ex. A.2 at PageID #563).  Further, TotalEnergies is required to indemnify, defend, and hold EAP Ohio harmless from and against all damages caused by, arising out of or resulting from

2

EAP Ohio's performance of its obligations under the agreement as Service Provider" (Id.).

**B.  Procedural History**

On December 18, 2018, Defendants initiated litigation in Oklahoma state court (the "Oklahoma litigation") against Chesapeake and Encino and their affiliated entities for breach of the Leases.  (ECF No. 9, Defs.' Mtn. to Dismiss at PageID #442).  Defendants are seeking judicial determination of whether the royalty provision in the Leases requires Encino to pay royalty on gross proceeds without deduction for post-production costs and money damages with interest on all underpaid amounts.  (Id. at PageID #443).  TotalEnergies is not a party to the Oklahoma litigation.

Encino removed the Oklahoma litigation to the Western District of Oklahoma and subsequently withdrew its notice of removal, admitting that it could not establish diversity between the parties.  (Id.; ECF No. 9-1, Defs.' Ex. B at PageID #473-477).  On February 25, 2019, Chesapeake and Encino filed suit against Defendants in Ohio state court alleging breach of contract, seeking a declaration that Chesapeake and Encino paid royalties consistent with the royalty provision and compelling arbitration of Count III of the Oklahoma litigation complaint. (ECF No. 9, Defs.' Mtn. to Dismiss at PageID #443; ECF No. 9-1, Defs.' Ex. C at PageID #481-492).  The Ohio court stayed that lawsuit, finding (1) there was a dispute involving the same parties in similar causes of action in the Oklahoma litigation prior to the Ohio case being filed; (2) Chesapeake and Encino filed a motion to dismiss for *forum non conveniens* in the Oklahoma litigation; and (3) that motion was overruled by the court in the Oklahoma litigation, finding that it had subject matter jurisdiction over the issues, personal jurisdiction over the parties, and that venue was proper in Beaver County, Oklahoma. Moreover, that the Ohio case involved the same parties and similar causes of action as the Oklahoma litigation.  (Id.; ECF No. 9-1, Defs.' Ex. D at

3

PageID #494-495).

In the Oklahoma litigation, Chesapeake and Encino petitioned the Oklahoma Supreme Court to issue writs directing the Oklahoma state court to dismiss the Oklahoma litigation.  The Oklahoma Supreme Court denied both petitions, finding the Oklahoma court did not abuse its discretion when it denied Chesapeake and Encino's motion to dismiss.  (Id.; ECF No. 9-1, Defs.' Ex. E at PageID #497-498, Defs.' Ex. F at PageID #500).

This matter was filed by TotalEnergies on August 27, 2021, seeking an interpretation of the royalty provisions under the Leases and affirmation of TotalEnergies' compliance with the provisions.  (ECF. No. 1, Compl.).  Specifically, TotalEnergies is asking this Court to "to interpret the Leases to require…payment of royalties to Lessors based on the full, undiminished proceeds [TotalEnergies] receives in its sale of production" and nothing more.  (Id.).  Defendants filed their motion to dismiss on October 13, 2021. (ECF No. 9, Defs.' Mtn. to Dismiss at Page ID#456).  In the motion, they argue that this matter should be dismissed because (1) the Court lacks subject matter jurisdiction, (2) Plaintiff lacks standing, (3) Plaintiff failed to join an indispensable party, and (4) the Court should decline jurisdiction under the Sixth Circuit's analysis in *Grand Trunk W. Rail Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). (Id. at PageID #445, 447, 451, 452).

## II. LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal when the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion to dismiss pursuant to Rule 12(b)(1) may take the form of either a facial or factual attack.  *United States v. Ritchie*, 15 F. 3d 592, 598 (6th Cir. 1994).  Facial attacks challenge the sufficiency of the pleading itself.  *Id*.  When

adjudicating a motion to dismiss based upon a facial attack, the court must accept all material allegations of the complaint as true and must construe the facts in favor of the non-moving party. Id. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). Factual attacks, by contrast, challenge the factual predicate for subject matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id*. With such a challenge, no presumption of truthfulness applies to the factual allegations, and the court is free to weight the evidence and satisfy itself as to the existence of its power to hear the case. *Id*. (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Regardless of the type of attack, the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Giesse v. Sec'y of Dept. of Health & Human Servs*., 522 F.3d 697. 702 (6th Cir. 2008). Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *See Von Dunser v. Aronoff*, 915 F.2d 1071, 1074-75 (6th Cir. 1990).

Defendants' Motion to Dismiss presents a factual attack on this Court's subject-matter jurisdiction with respect to Plaintiff's declaratory judgment action. (ECF No. 9, Defs.' Mtn. to Dismiss. at PageID #445; *see also Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (explaining that "[a] factual attack challenges the factual existence of subject matter jurisdiction.). Defendants argue that the facts do not support this Court having subject matter jurisdiction because (1) Facts alleged in Plaintiff's Complaint fail to show that the amount-in-controversy is greater than $75,000 and (2) Plaintiff filed this action after the Oklahoma Supreme Court twice ruled that venue and jurisdiction are proper in Oklahoma. (ECF. No 9, Defs.' Mtn. to Dismiss at PageID #447). Accordingly, in deciding whether the Court has subject matter jurisdiction over Plaintiff's declaratory judgment action, the Court does not presume that Plaintiff's factual allegations are true and is free to weight evidence to confirm the existence of the factual predicate for subject matter jurisdiction. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810

(6th Cir. 2015).

**B.  Declaratory Judgment Act, U.S.C. § 2201, *et seq***

A federal court, "in a case of actual controversy withing its jurisdiction, … may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Cardinal Health, Inc. v. Nat'l Fire Ins. Co.,* 29 F.4th 792, 796 (6th Cir. 2022).  Moreover, Section 2201 "is not an independent basis of subject matter jurisdiction." *See Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir.2007).  A court's power to render a declaratory judgment is permissive, not mandatory.  *Grand Trunk*, 746 F.2d at 325.  Federal courts have "unique and substantial discretion" in determining whether to declare the rights of litigants.  *Cardinal* Health, 29 F.4th at 796; *Wilton v. Seven Falls Co*., 515 U.S. 277,286, 115 S.Ct. 2137, 132 L.Ed.2s 214 (1995).

### III. LAW AND ANALYSIS

**A.  Subject Matter Jurisdiction**

**1.  Amount-in-Controversy Requirement**

Defendants argue that this Court lacks subject matter jurisdiction over this matter because Plaintiff alleges no facts to support that the amount-in-controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a).  (ECF No. 9, Defs.' Mem. in Supp. at PageID #445) *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.").  Defendants' argument lacks merit because the standard for meeting the amount-in-controversy requirement is liberal.  "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee*

*Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014)

*See, e.g., Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 276, 97 S.Ct. 568, 50 L.Ed.2d 471

(1977) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.")

(quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82

L.Ed. 845 (1938); alteration in original).

Plaintiff alleges in its Complaint "the amount in controversy exceeds $75,000, exclusive

of interest and costs."  (ECF No. 1, Compl. at PageID #4 ¶ 12).  Plaintiff's allegation is plausible,

as the issue in this matter involves a calculation of royalties owed pursuant to the Leases where

Plaintiff has a 25% working interest owned in the Leases.  Moreover, Plaintiff points out that in

the Oklahoma litigation, Defendants themselves acknowledge that there are potentially "millions

and hundreds of thousands of dollars" in underpayments at issue.  (ECF No. 13, Pl.'s Mem. in

Opp., at PageID #541).  Accordingly, Plaintiff has sufficiently alleged that the amount-in-

controversy in this matter exceeds the jurisdictional requirement.

**2.  *Rooker-Feldman* Doctrine**

Defendants also argue that this Court lacks subject matter jurisdiction under the *Rooker-*

*Feldman* doctrine.  The *Rooker-Feldman* doctrine "bars a claim by looking to the 'source of the

injury the plaintiff alleges in the federal complaint.' ... If the source of the plaintiff's injury is the

state-court judgment itself, then *Rooker-Feldman* applies."  *VanderKodde v. Mary Jane M. Elliott,*

*P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393

(6th Cir. 2006)).

This argument lacks merit because Plaintiff is not a party to the Oklahoma litigation and

there has been no state-court judgment on Plaintiff's claims.  The Supreme Court held that the

Rooker-Feldman doctrine "is confined to cases brought by state-court losers complaining of

injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). As of the filing date of Defendants' Motion to Dismiss (ECF. No 9), there has not been a ruling in the Oklahoma litigation. Therefore, Plaintiff cannot be considered a state-court loser. Moreover, Plaintiff is not a party to the Oklahoma litigation, therefore, the *Rooker-Feldman* doctrine cannot be invoked against it. *See Lance v. Dennis,* 546 U.S. 459, 464 126 S.Ct. 1198, 1200, 126 L.Ed.2d 1059 (2006) ("We have held *Rooker–Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding.") *See also Johnson v. De Grandy,* 512 U.S. 997, 1005–1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (*Rooker–Feldman* does not bar actions by a nonparty to the earlier state suit.).

Because Plaintiff sufficiently alleged facts supporting the jurisdictional amount-in-controversy and the Rooker-Feldman doctrine does not apply, this Court has subject matter jurisdiction in this matter to determine whether declaratory judgment is appropriate.

**B.     Declaratory Judgment**

**1.   *Grand Trunk* factors**

To determine whether declaratory judgment is appropriate, the district court should consider: "(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata,' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective."

*Grand Trunk*, 746 F.2d at 326.

### a.  Factor 1

A declaratory judgment in this action would not settle the controversy.  As previously stated, the controversy in this action arises from and affects the Oklahoma litigation.  A judgment by this Court would not settle the controversy in the latter litigation.  *Id*. ("the instant action does not involve an independent dispute because it arises from and affects a pending [state court] lawsuit.  It would not clear up the issues in that case.").

### b.  Factor 2

A judgment in this action would not clarify legal relations at issue in the Oklahoma litigation.  Further, it is unclear what the effect of a declaratory judgment in favor of Plaintiff in this action would be on the Oklahoma litigation. *Id*. ("The case would continue in the [state court], and the effect of our ruling on that proceeding is unclear.").

### c.  Factor 3

The Court does not find that Plaintiff is using this action as a means of procedural fencing.  There has been no ruling in the Oklahoma litigation, therefore, it cannot be said that Plaintiff is selecting a forum in which to start a race for *res judicata*.  Accordingly, in absence of such evidence, the Court finds this factor to be neutral.  *Cardinal Health*, 29 F.4th at 797; *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d. 386, 399 (6th Cir. 2019) ("if there is no evidence of procedural fencing, we *often* find that the factor is neutral.").

### d.  Factor 4

Accepting jurisdiction in this case would increase friction between federal and state courts, as there is currently pending litigation in Oklahoma state court regarding interpretation of the Leases and underpayment of royalties pursuant to the leases.  The pending Oklahoma litigation

decision "may affect how some (but not all) issues in this case are resolved." *Cardinal Health,* 29 F.4th at 798.  In analyzing the fourth factor, three subfactors should be considered: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Id.* at 798-99; *see also Scottsdale v. Flowers*, 513 F. 3d 546, 560 (6th Cir. 2008) (quotation omitted).

### i. Subfactor 1

The first subfactor's focus is on whether the state court's resolution of factual issues in the case is necessary for the district court's resolution of the declaratory judgment action and weighs against exercising jurisdiction when a resolution of the issue in federal court will require making factual findings that may conflict with similar findings made by the state court. *Cardinal Health Inc.*, 29 F.4th at 799. Plaintiff asks this Court to interpret the royalty obligations under the Leases and determine that it is complying with the royalty obligations.  In the Oklahoma litigation, the Oklahoma state court will be making the same interpretation and determinations to resolve the dispute between Encino and Defendants.  Moreover, a resolution in the Oklahoma court will affect the disposition of Plaintiff's obligations and a decision by this Court could create comity concerns between the courts.  Accordingly, this Court finds that these issues are more appropriately handled by the Oklahoma state court.

### ii. Subfactor 2

As to the second subfactor, our Court "generally consider[s] state courts to be in a better position to evaluate novel questions of state law." *Id*. citing *Flowers*, 513 F.3d at 560.  Here, the

state court is better suited to evaluate the disputed contractual provisions under the Leases under the applicable state law.  Further, this Court cannot predict how the state court would resolve the issues in the Oklahoma litigation.  *Cardinal Health Inc*., 29 F.4th at 799-800.

### iii.  Subfactor 3

The third subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Cardinal Health Inc*., 29 F.4th at 800; *Flowers*, 513 F.3d at 561.  As stated above, state law provides an applicable analysis to evaluate the disputed royalty provision and to determine whether it has been breached. Moreover, the Oklahoma litigation does not implicate either federal common or statutory law. *Id*.; *see also Travelers Indem. Co. v. Bowling Green Pro. Assoc., PLC,* 495 F.3d at 273 ("This is not a case where federal law will come into play, and, therefore, a state court forum is preferable.").

### e.  Factor 5

A better alternative remedy exists for Plaintiff.  Plaintiff initiated this action prior to the resolution of the Oklahoma litigation, which remains pending.  As such, there has been no determination of how much, if at all, Encino underpaid under its royalty obligations to Defendants. If the Oklahoma state court determines that Encino has underpaid royalties, and attributes part of the owed amount to Plaintiff, Plaintiff can initiate an action against Encino to dispute the underpaid royalty amounts.  Moreover, both the Ohio and Oklahoma declaratory judgment statutes permit state courts to declare rights under a contract and decide questions of contract construction.  See Ohio Rev. Code § 2721.03 and Okla. Stat. Tit. 12 § 1651.

Because the Court finds that declaratory judgment is inappropriate, Defendants' remaining arguments in their Motion to Dismiss are rendered moot and the Court need not address them.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 9) without prejudice, pending the outcome of the Oklahoma litigation.  Because the Court finds that a declaratory judgment is inappropriate in this matter, Defendants' remaining arguments in their Motion to Dismiss are moot and the Court need not address them.


**IT IS SO ORDERED.**



Dated: August 25, 2022

_____
JUDGE CHARLES E. FLEMING

12